**Mary McCASKEY, Individually and as Widow, Heir and the Personal Representative of the Estate of Ralph McCaskey, Plaintiff,**

v.

**CONTINENTAL AIRLINES, INC., et al., Defendants.**

**CIV. A. No. G–00–572.**

United States District Court, S.D. Texas, Galveston Division.

March 9, 2001.

516

Ronald L. White, White Mackillop & Baham, PC, Houston, TX, mediator.

Steven E. Holden, Attorney at Law, Michael S. Ashworth, Attorney at Law, Bruce A. McKenna, Attorney at Law, Tulsa, OK, for Mary McCaskey, Individually and as Widow, Heir and the Personal Representative of the Estate of Ralph McCaskey, Ralph McCaskey, The Estate of, plaintiffs.

Nicholas E. Zito, Markle Ramos et al., Houston, TX, James Richard Watkins, Royston Rayzor et al., Galveston, TX, Mary C. Harlan Brooksby, Goodwin Raup PC, Phoenix, AZ, Stephen Robert Lewis, Jr., Lewis & Williams, Galveston, TX, William Lee Maynard, Beirne Maynard & Parsons, Houston, TX, for Continental Airlines Incorporated, John Doe Pilot, John Doe Physician, Gordon Bethune, an Individual, Douglas Dang, Douglas Dang, Dr., MedAire, defendants.

*ORDER DENYING DEFENDANT ME-DAIRE, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE AND MOTION FOR DISCRETIONARY VENUE TRANSFER*

KENT, District Judge.

Plaintiff brings this wrongful death lawsuit based upon the October 10, 1998 passing of her husband. Now before the Court is Defendant MedAire, Inc.'s ("MedAire") Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss or Transfer for Improper Venue, and Motion for Discretionary Venue Transfer, each filed December 26, 2000. For the reasons stated below, MedAire's Motions are **DENIED.**

## I. FACTUAL SUMMARY

On September 24, 1998, Plaintiff and her husband were scheduled to travel on Continental Airlines, Inc. ("Continental") from their home in Tulsa, Oklahoma to Frankfurt, Germany. In order to reach Frankfurt, they flew from Tulsa to Houston, Texas. In Houston, they boarded Continental Flight 1720 bound for Newark, New Jersey, from which point they were scheduled to catch their international flight to Frankfurt.

Tragically, shortly after departing Houston on Flight 1720, Plaintiff's husband, Ralph McCaskey, is alleged to have suffered a stroke. Despite Mr. McCaskey's condition, however, Flight 1720 continued on to its planned destination of Newark, New Jersey. Upon arriving in Newark, Plaintiff and her husband sought medical attention and did not board their international flight. Several weeks later, on October 10, 1998, while aboard a train returning to Tulsa from New Jersey, Mr. McCaskey died, allegedly from complications attributable to the September 24 stroke.

As is common in the airline industry, Continental had a contract with a company, here Defendant MedAire, to provide medical advice in the event of in-flight medical emergencies. MedAire employs physicians who, based upon the information provided to them, assess the medical situation from afar. MedAire then makes recommendations to the flight crew regarding care of the ill traveler and possible flight diversions. On September 24, 1998, Continental contacted MedAire and allegedly sought and received advice regarding how to proceed in light of Mr. McCaskey's medical situation.

On September 22, 2000, Plaintiff filed suit against Continental and others. Soon thereafter, on October 5, 2000, Plaintiff amended her Complaint, adding MedAire as a Defendant in this action. Plaintiff now alleges, in essence, that MedAire was negligent in its provision of medical services, and that this negligence led to Mr. McCaskey's death a few weeks later.

MedAire is not a Texas citizen. It is, rather, an Arizona corporation with its principal place of business in Phoenix, Arizona. MedAire now argues, alternatively, that this Court lacks personal jurisdiction over it, that venue is improper, or that the

Court should exercise its discretion to transfer the action to Arizona.

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

MedAire seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(2), contending that this Court lacks personal jurisdiction over it. In federal court, personal jurisdiction over a nonresident defendant is proper when: (1) the defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir.2000); *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional analysis under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356–57 (Tex. 1990).

Whether the exercise of personal jurisdiction over a defendant is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that the defendant has "minimum contacts" with Texas. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must ensure that requiring the defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994); *Ruston*, 9 F.3d at 418.

The "minimum contacts" aspect of due process can be satisfied by either finding general jurisdiction or specific jurisdiction. *See Wilson*, 20 F.3d at 647. For general jurisdiction, the defendant's contacts with the forum state must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1496 (5th Cir.1993). By contrast, the minimum contacts analysis in a specific jurisdiction case is more "narrow, focusing on the relationship between the defendant, the cause of action and the forum state." *Hargrove v. Underwriters at Lloyd's, London*, 937 F.Supp. 595, 605 (S.D.Tex.1996). Thus, specific jurisdiction exists over a nonresident defendant if the defendant has " 'purposefully directed' his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *see also Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *Villar*, 990 F.2d at 1496. Accordingly, even a single contact with the forum state can be sufficient to support specific jurisdiction. *See Ruston*, 9 F.3d at 419; *see also Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil."). The critical inquiry for specific jurisdiction, therefore, concerns whether the defendant, by directing activities to the forum state, purposefully availed itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws, such that the defendant should reasonably anticipate being haled into court in the forum state. *See Burger King Corp.*, 471 U.S. at 474–75, 105 S.Ct. at 2182; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 884 (5th Cir.1993).

■ Generally, with regard to a Motion to Dismiss for Lack of Personal Jurisdiction, once a nonresident defendant raises the issue of personal jurisdiction by motion, the plaintiff must bear the burden of establishing the Court's jurisdiction over the nonresident. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994). However, a plaintiff may bear her burden by presenting a prima facie case in situations, like this, in which the Court does not hold an evidentiary hearing. *See id.; Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir.1990). Moreover, in evaluating whether a plaintiff has presented a prima facie case of jurisdiction "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties affidavits must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir.1985); *accord Stripling*, 234 F.3d at 869.

### 1. *Minimum Contacts*

Plaintiff's First Amended Complaint ("Complaint") alleges that her husband's stroke occurred "shortly after" departing Houston.[1] Pl.'s 1st Am. Compl. at para. 17. Apparently based upon these allegations, Plaintiff contends, in her Response to MedAire's Motion to Dismiss, that MedAire's medical advice was dispensed in (over) Texas, and that MedAire's "consultation caused Ralph McCaskey harm while McCaskey was physically present within the State of Texas." Pl.'s Resp. at pg. 12. If Plaintiff could carry her prima facie burden on this assertion, this would be a contact from which specific jurisdiction would likely attach. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir.1999) ("[A] single act ... directed toward Texas that gives rise to a cause of action ... can support a finding of minimum contacts."). However, the allegations made in Plaintiff's Complaint do not fairly support this argument. Plaintiff's Complaint simply makes no mention of the aircraft's location when MedAire became involved with Mr. McCaskey's situation.[2] In contrast to Plaintiff's unsubstantiated argument, MedAire does attempt to specifically refute that the flight remained in Texas airspace when MedAire dispensed its advice. However, MedAire's efforts likewise leave something to be desired. MedAire has attached, by way of its Reply Brief, documentation authenticated by affidavit, but it has done nothing to provide any insight into what these documents mean.[3] In the future, these practitioners,

1. Plaintiff's Complaint further alleges that Continental "consulted [with MedAire] during the medical emergency which resulted in Ralph McCaskey's death." Pl.'s 1st Am. Compl. at para. 6. Moreover, "Defendant MedAire's failure to train its employees and/or its failure to implement and/or comply with proper protocols caused a wholly inadequate assessment of the situation and the seriousness of Ralph McCaskey's condition, the result of which was his death." Pl.'s 1st Am. Compl. at para. 58. And additionally, that "[a]fter the 'phone call' made by Defendant Airlines to Defendants MedAire and John Doe Physician, Mary McCaskey learned the flight would continue uninterrupted." Pl.'s 1st Am. Compl. at para. 62.

2. Plaintiff could have supplemented the allegations seen in her Complaint with affidavits or discovery materials, which could have provided the factual basis to make this argument, but she has failed to do so. In rejecting Plaintiff's location argument, the Court is not suggesting that the aircraft was not in Texas when MedAire became involved, but simply pointing out the lack of information before it from which to conclude, even on a prima facie basis, that the plane was in the Texas forum. Perhaps at this early stage of the proceedings, Plaintiff simply has no information regarding the aircraft's location. Mere conjecture, however, will not enable it to survive this Motion to Dismiss. Strangely, Plaintiff does attach a newspaper article and also several letters from Defendant Continental, which is not challenging jurisdiction. These items are not helpful.

3. MedAire attaches a "MedLink Patch Form." The MedLink Patch Form appears to be a log of basic information regarding the flight, the patient and the treatment given. MedAire argues that this document indicates that Flight 1720 was over Mississippi when MedAire's physician communicated with the

and others, would be well advised to clearly articulate non-conclusory facts by way of affidavit, in order to both authenticate and explain documents attached to their filings which are to have evidentiary effect.

Notwithstanding these deficiencies, however, the Court notes that several factors nonetheless support finding that MedAire's contacts in Texas are sufficient to establish specific personal jurisdiction: (1) MedAire entered into a contract with Houston, Texas-based Continental to provide in-flight medical assistance in Texas and elsewhere; (2) MedAire had similar contracts to provide its medical service for numerous other airlines operating in Texas; (3) one of MedAire's physicians lives and works in Texas; and (4) the flight on which Plaintiff was traveling originated in Houston, Texas.[4]

The most crucial of these contacts is the contract between Continental and MedAire. When a nonresident defendant contracts with a forum resident, this may, in some instances, suffice to establish that the defendant has purposefully availed itself of the forum state's laws. *Compare Burger King,* 471 U.S. at 479–80, 105 S.Ct. at 2185–86 (upholding jurisdiction based upon a contract with a resident of forum), *with Colwell Realty Invs., Inc. v. Triple T Inns of Arizona, Inc.,* 785 F.2d 1330, 1334 (5th Cir.1986) (declining jurisdiction when the contract did not contemplate the performance of any obligation in the forum state). In evaluating whether a contract is a minimum contact demonstrating purposeful availment, the Court looks to the " 'factors of prior negotiations, contemplated future consequences, terms of the con-

tract, and the parties' actual course of dealing." ' *Colwell Realty,* 785 F.2d at 1334 (quoting *Stuart v. Spademan,* 772 F.2d 1185, 1193 (5th Cir.1985)); *see also Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185. In this regard, when a defendant, by contract, creates " 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *Travelers · Health Ass'n v. Virginia,* 339 U.S. 643, 648, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950) (internal citations omitted)). Obviously, a defendant's jurisdictional connection becomes more tenuous when the plaintiff urges that specific jurisdiction exists over a tort, which was possibly committed out of the forum, based upon non-tort activities within the state. Equally obvious, however, is that in appropriate cases, non-tort contacts will indeed suffice to establish specific jurisdiction over the tort. *See Prejean v. Sonatrach, Inc.,* 652 F.2d 1260, 1270 n. 21 (5th Cir. Unit A Aug.13, 1981) ("Logically there is no reason why a tort cannot grow out of a contractual contact" as the contract "brought the parties within tortious 'striking distance' of each other."); *see also Trinity Indus., Inc. v. Myers & Assocs., Ltd.,* 41 F.3d 229, 231–32 (5th Cir.1995); *Torres de Maquera v. Yacu Runa Naviera S.A.,* 107 F.Supp.2d 770, 775–77 (S.D.Tex. 2000); *Miller v. Jones,* 779 F.Supp. 207, 212 (D.Conn.1991).

MedAire provided medical advice to aid Mr. McCaskey aboard Flight 1720 based upon a contract it had entered into with Defendant Continental.[5] This contract, by

---

Continental crew. However, while the MedLink Patch Form says "Mississippi" in one of its blanks, the Court has no way of knowing whether this represents MedAire's first contact with the aircraft or the culmination of lengthy communications.

**4.** MedAire's counsel also revealed at the Court's recent Rule 16 Scheduling Conference that MedAire has now applied for a license to do business in Texas. While conduct occurring after the filing of this action

does not bear on the Court's analysis, the Court does appreciate counsel's candor in this regard.

**5.** MedAire argues that the contract with Continental contains a forum selection clause providing for venue in Arizona. MedAire does not indicate by citation what portion of the contract has this effect, but the Court assumes that MedAire relies upon Section 16.6, which clearly provides only for the application of Arizona law. This is not a forum

its very nature, contemplated that MedAire would deliberately reach out of Arizona and provide medical advice to Continental aircraft wherever they might be located. Obviously these aircraft would often be in Texas.[6] Thus, MedAire had full knowledge that its medical advice would affect air travelers in Texas.[7]

■ Incredibly, however, MedAire argues that it was not reasonably foreseeable that it would be "haled into a Texas court for a *tort* claim asserted by a third party based on its contractual relationship with Continental." *See* Def.'s Reply at pg. 4 (emphasis in original). This argument is, simply and bluntly, ludicrous.[8] *See Prejean*, 652 F.2d at 1270 n. 21. MedAire reasonably *should* have recognized this possibility. In fact, MedAire should foresee that it can be subject to process virtually everywhere in the United States, at least with respect to tort suits based upon its medical advice. *See Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081, 1084 (5th Cir.1984) (quoting with approval the Seventh Circuit's decision in *Nelson v. Park Industries, Inc.*, 717 F.2d 1120, 1125–26 (7th Cir.1983), which stated that the "scope of the foreseeable market ... is generally broader with respect to manufac-

turers and primary distributors of products who are at the start of a distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market."); *accord Ruston*, 9 F.3d at 420; *Williamson v. Petroleum Helicopters, Inc.*, 31 F.Supp.2d 548, 552 (S.D.Tex.1998). Although these cases deal with products, the analysis does not change when a service is dispensed. In this case, MedAire, as the upstream "distributor" of in-flight medical advice, directly chose to target the Texas market by entering into a contract with Continental, and with other airlines operating in Texas. As a result, Plaintiff was allegedly caused harm by MedAire's negligence. It does not matter that the medical advice was transmitted from Arizona. Accordingly, this Court finds that MedAire has purposely availed itself of the privilege of conducting business activities in Texas, thereby meeting the requirements for specific jurisdiction under the first prong of *International Shoe* and its progeny.

### 2. *Fair Play and Substantial Justice*

■ The Court further concludes that the exercise of jurisdiction over MedAire

---

selection clause. Moreover, even if such a clause did exist it would have no bearing on the Court's analysis. For example, MedAire would almost certainly be subject to personal jurisdiction and venue in Texas if Continental sued it on the contract. The issue of whether to transfer venue to Arizona based upon an alleged forum selection clause would be a different inquiry. *See Brock v. Baskin–Robbins USA Co.*, 113 F.Supp.2d 1078, 1084–85 (E.D.Tex.2000). Moreover, in this case, the Court is not concerned with the contract in and of itself, but rather with what the contract embodies in terms of MedAire's contemplated performance. *See Colwell*, 785 F.2d at 1334.

6. MedAire's performance under this contract began on March 1, 1992 and appears to have continued uninterrupted until the present. Houston, Texas is Continental's home, and the location of one of its three "hub" airports. Literally hundreds of Continental flights takeoff and land at Houston Intercontinental Airport on a daily basis.

7. MedAire also has contractual relationships with dozens of other airlines. Many of these airlines operate in Texas, including: America West Airlines, Continental Express, Northwest Airlines, Southwest Airlines (another Texas-based airline), Trans World Airways, United Airlines and U.S. Airways. Again, these contracts would by their very nature entail MedAire dispensing its service into Texas.

8. MedAire also attempts to downplay its contract with Continental, and thus its Texas' connection, by referring to Continental as "a Delaware Corporation with an *office* in Texas." Def.'s Reply at pg. 3 (emphasis added); *accord* Def.'s Mot. at pg. 5. Houston Intercontinental Airport is a gargantuan complex that Continental dominates. Calling Houston Intercontinental Airport an office in Texas is like calling Buckingham Palace, a flat in London. This sort of advocacy is an affront to the common sense of this or any Court and an affirmative disservice to the judicial system as a whole.

would not offend "traditional notions of fair play and substantial justice.", *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. To satisfy the Constitution, there must exist a sufficient relationship between the defendant and the forum state such that it would be "reasonable ... to require the corporation to defend the particular suit which is brought there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). In evaluating the reasonableness issue, the Court looks to the burden on the defendant, the interests of the forum state, the judicial system's interest in efficient resolution, the plaintiff's interests in obtaining relief, and the shared interest of the several states in furthering "fundamental substantive social policies." *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *see also Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 377 (5th Cir.1987). Once minimum contacts have been established, however, it is incumbent upon a defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. The assertion of jurisdiction will rarely be unfair after minimum contacts have been shown. *See Wien Air,* 195 F.3d at 215.

MedAire does not argue that the assertion of jurisdiction in this case would be unfair or unreasonable.[9] In the absence of such argument, the Court cannot and, in any event, would not, here find that jurisdiction should not be exercised. Texas clearly has an interest in adjudicating the case of a Plaintiff whose husband was allegedly injured while aboard a Continental Airlines flight outbound from Houston, Texas. MedAire could "reasonably anticipate" being haled into court in Texas, at least with regard to actions based upon its dispensation of medical advice. The Court

rejects any notion that trial of this matter in Texas is a burden on a corporation such as MedAire, which chose to enter into this type of service contract with Continental.[10] Thus, although MedAire will undoubtedly experience some inconvenience by litigating this matter in Texas rather than in its home state, this inconvenience is mitigated by MedAire's significant and long-standing business contacts in Texas. MedAire proffers no considerations that would "render jurisdiction unreasonable," and thus it is hardly contrary to "traditional notions of fair play and substantial justice" to require MedAire to appear in a Texas forum.

After careful consideration of the totality of circumstances, the Court concludes that specific personal jurisdiction exists over MedAire in this action, and that the exercise of jurisdiction is consistent with Constitutional requirements. Accordingly, MedAire's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED.**

**B.** *Motion to Dismiss or Transfer for Improper Venue*

MedAire also, pursuant to Fed.R.Civ.P. 12(b)(3), challenges the propriety of venue in the Southern District of Texas. MedAire has quoted the relevant portions of the venue statute, 28 U.S.C. § 1391, and articulated that Plaintiff cannot establish venue under any one of these statutory provisions. MedAire fails, however, to cite any case authority by which it proposes the Court should analyze its manifestly conclusory arguments. This failure alone can constitute waiver. *See Cook v. Pride Petroleum Servs., Inc.* 3 F.Supp.2d 759, 760–61 (S.D.Tex.1998) (criticizing the shortcomings of a defendant's venue motion). Understandably, in response, Plaintiff devotes little effort to refuting MedAire's facially deficient argument. Nevertheless, the Court will examine, as

---

**9.** MedAire's Motion to Dismiss focuses only on the minimum contacts portion of the Court's requisite analysis.

**10.** As mentioned above, MedAire also allegedly has similar agreements with several other airlines operating in Texas.

best it can, the propriety of venue in this action.

The Court's subject matter jurisdiction in this matter is based solely upon diversity of citizenship. In such an action, 28 U.S.C. § 1391(a) provides that venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Plaintiff asserts that venue is proper under the "transactional" venue provision, 28 U.S.C. § 1391(a)(2), and also under the "fallback" provision, 28 U.S.C. § 1391(a)(3). On its own initiative, the Court also considers the propriety of "residential" venue under 28 U.S.C. § 1391(a)(1).

 The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss an action where venue in that court is improper. *See* Fed. R.Civ.P. 12(b)(3). Once a defendant raises the issue of proper venue by motion, the burden of proof is placed upon the plaintiff to sustain venue. *See Seariver Maritime Fin. Holdings, Inc. v. Pena,* 952 F.Supp. 455, 458 (S.D.Tex.1996); 15 Charles Alan Wright et al., Federal Practice and Procedure § 3826 (2d ed. 1986) ("There are cases holding that the burden is on the objecting defendant to establish that venue is improper. But 'the better view,' and the clear weight of authority, is that, when objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue."); *but see Bounty-Full Entm't, Inc. v. Forever Blue Entm't Group, Inc.,* 923 F.Supp. 950, 957–58 (S.D.Tex.1996). However, in the absence of an evidentiary hearing, a court should allow a plaintiff to carry this burden based upon setting forth facts that taken as true would establish venue. *Cf. Wilson,* 20 F.3d at 648 (holding that when a court rules upon a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, "the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper."). The court should, therefore, accept uncontroverted facts contained in plaintiff's complaint as true and resolve conflicts in the parties' affidavits in the plaintiff's favor. *See id.* Thus, although a defendant need not affirmatively disprove all bases for the plaintiff's venue choice, the court will give plaintiff every benefit of doubt in ascertaining what facts control its legal decision. Finally, in conducting its analysis, the Court is mindful that "[i]t is well established that in a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant." *Hickey v. St. Martin's Press, Inc.,* 978 F.Supp. 230, 240 (D.Md.1997).

### 1. *Section 1391(a)(1)—Residential Venue*

Section 1391(a)(1) provides for venue based upon the residence of the defendants. *See* 28 U.S.C. § 1391(a)(1). Under this venue provision, it is irrelevant where the events or omissions giving rise to the action occurred. However, section (a)(1) does have an important limitation; all defendants must reside in the same state. *See id.*

MedAire contends that venue is improper in the Southern District of Texas because it resides in Arizona and Defendant Continental resides in Texas. This argument fails to understand the important effect of 28 U.S.C. § 1391(c), which provides that a corporation is deemed to reside, in some district, in any state in which

it is subject to personal jurisdiction.[11] *See* 28 U.S.C. § 1391(c) ("[A] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."). The Court above found that MedAire is subject to personal jurisdiction in Texas. Accordingly, MedAire's argument fails. MedAire and Continental both "reside" in Texas. *See* 28 U.S.C. § 1391(a)(1), (c).

This determination, however, does not yet establish the propriety of venue under section (a)(1). The Court must also ascertain whether all Defendants reside in Texas. *See* 28 U.S.C. § 1391(a)(1). Plaintiff has sued, in addition to Continental and MedAire, three individual persons. Two of these persons, Defendant Gordon Bethune ("Bethune") and Defendant John Doe Pilot ("Pilot"), have answered. Neither Bethune nor Pilot has contested this Court's personal jurisdiction or venue. Accordingly, the Court concludes that these two individuals reside in Texas.[12]

Thus, the Court is left with one additional defendant, John Doe Physician, the MedAire doctor who provided the medical consultation for Continental and Mr. McCaskey on Flight 1720. Since the filing of Plaintiff's Complaint, this physician's identity has become known, and a summons has been issued for a Dr. Douglas Dang ("Dang"). Dang, has not answered. The Court has no knowledge of where Dang resides, or whether he is subject to this Court's personal jurisdiction.

 The question thus becomes whether the Court must consider Defendant Dang in assessing whether all Defendants reside in Texas. The Court concludes that

it need not. *Cf. Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990) (holding that it is "proper to assess the propriety of venue on the basis of circumstances as they now exist, as opposed to the state of affairs that obtained when the complaint was first filed against two defendants."); *accord Hickey v. St. Martin's Press, Inc.*, 978 F.Supp. 230, 240 (D.Md.1997); *but see Horihan v. Hartford Ins. Co. of the Midwest*, 979 F.Supp. 1073, 1076 (E.D.Tex.1997) (holding that dismissed defendants must be included when analyzing venue).

The Eighth Circuit's *Knowlton* opinion usefully illustrates the necessarily pragmatic approach courts should take when analyzing venue. *See* 900 F.2d at 1200. However, this opinion does not directly control what appears to be an issue of first impression. Unlike in *Knowlton*, the Court is not faced with a plaintiff's effort to sustain previously improper venue after dismissing a party from the suit. *See id.* Rather, the Court is being asked to view the parties in this matter prospectively. If taken to the extreme, any effort by the Court to do so could involve hypothetical considerations of later added necessary parties or other non-present defendants. The Court cannot take such an abstract view of the parties in evaluating residential venue. Therefore, the Court concludes that it must not consider Defendant Dang in its present venue analysis. As a corollary to this holding, if Dr. Dang does later answer, and is found subject to the Court's personal jurisdiction, but is not a resident of Texas, Plaintiff will need to sustain venue over her claims against him on a basis other than 28 U.S.C. § 1391(a)(1). However, the Court will not decline venue over

---

11. If the corporation, such as MedAire, were used as the sole venue basis in the forum district, the court would also be required to ensure that the corporation's contacts with the district "would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c). In this matter, Continental resides in the Southern District. Therefore, it is irrelevant in which specific Texas district MedAire is deemed to reside, although MedAire's contacts would seem to make the Southern District appropriate in any event.

12. For individual persons, "residence" means domicile. *See* 15 Charles Alan Wright et al., *Federal Practice & Procedure*, § 3805 (2d ed.1986).

the extant parties and claims in this action based upon speculation or conjecture as to the residence of a party who has not answered.

All Defendants who have answered are residents of Texas, and Continental clearly is a resident of the Southern District. Thus, venue is proper under section 1391(a)(1) as all Defendants reside in Texas, and at least one Defendant resides in this District. *See* 28 U.S.C. § 1391(a)(1), (c); 15 Charles Alan Wright et al., Federal Practice & Procedure, § 3802 (Supp.2000) ("All defendants must reside in the same state, but if they do, venue is proper in any district in which any defendant resides.").

### 2. Section 1391(a)(2)—Transactional Venue

Section 1391(a)(2) sets forth the so-called "transactional" basis for venue. This provision enables a Plaintiff to bring suit in the place where a "substantial part of the events or omissions giving rise to the *claim* occurred." 28 U.S.C. § 1391(a)(2) (emphasis added). MedAire confusingly argues that venue is not proper under this section because the events giving rise to Plaintiff's claims "were alleged delays in obtaining treatment ... during a flight from Houston, Texas to New Jersey." Def.'s Reply at pg. 7. Seemingly, this all but admits that substantial events or omissions occurred in Texas. Plaintiff indeed takes this position. First, Plaintiff alleges that Continental's misconduct began "shortly after take off." From this, Plaintiff argues that a "substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas. 28 U.S.C. § 1391(a)(2).

■ If Continental's conduct could be used to establish venue over MedAire, then Plaintiff would likely carry its burden under this section. *See* Discussion Section II.A.1., *supra* (explaining how Plaintiff fails to sufficiently allege by complaint or

affidavit that MedAire dispensed medical advice in Texas). However, venue under section (a)(2) must be established against *each* "claim" and against *each* defendant. *See* 15 Charles Alan Wright et al., Federal Practice & Procedure, § 3808 (2d ed.1986). Thus, merely because transactional venue is proper here as to Continental does not make venue *ipso facto* proper over MedAire. Simply put, there is no pendant venue under 28 U.S.C. § 1391(a)(2). *See, e.g., Davis v. Advantage Int'l, Inc.*, 818 F.Supp. 1285, 1286 (E.D.Mo.1993).

■ Against MedAire, Plaintiff basically pleads negligence. Plaintiff must, therefore, establish venue under section (a)(2) by pleading that a substantial portion of MedAire's allegedly negligent conduct giving rise to Plaintiff's claims against MedAire took place in the Southern District of Texas. Plaintiff has not made such an allegation. Thus, venue is not proper under section (a)(2) against MedAire.

### 3. Section 1391(a)(3)—Fallback Venue

The Court has already concluded that venue is proper under section 1391(a)(1) in this action. Because, however, it considered a seemingly novel question of law, out of an abundance of caution, the Court also addresses the propriety of venue under section 1391(a)(3). This section is a "fallback" provision, which a plaintiff may apply when venue cannot be established over the "action" under either (a)(1) or (a)(2).[13] *See* 28 U.S.C. § 1391(a)(3); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir.1996); *Samuelson v. Honeywell*, 863 F.Supp. 1503, 1509 (E.D.Okla.1994). Under section (a)(3), the Southern District of Texas is undeniably "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(a)(3). Therefore, if there is no other district in which

---

**13.** One recognized use for this provision is when a substantial part of the claim did not arise in the United States, and neither do all

defendants reside in the same state. *See* 15 Charles Alan Wright et al., Federal Practice & Procedure, § 3802 (Supp.2000).

the "action" could "otherwise be brought" venue is proper under section (a)(3).

 MedAire argues that venue is not proper in this District because the action could have otherwise been brought in Arizona. This argument is incorrect. Section (a)(3) requires that another district exist in which Plaintiff can establish both personal jurisdiction and venue over each party and each claim in the *entire* "action," not just over a single claim versus MedAire. *See FS Photo, Inc. v. PictureVision, Inc.,* 48 F.Supp.2d 442, 448–49 (D.Del.1999); *Cf. Hoffman v. Blaski,* 363 U.S. 335, 340–44, 80 S.Ct. 1084, 1088–91, 4 L.Ed.2d 1254 (1960); *Liaw Su Teng v. Skaarup,* 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, Louisiana,* 821 F.2d 1147 (5th Cir.1987). In order to reach this conclusion, the Court necessarily concludes that the term "action" seen in section (a)(3) is more broad than "claim," which is used in section (a)(2). An action, unlike a claim, encompasses all the parties and claims presently and properly before this Court. *See* Black's Law Dictionary 28 (7th ed.1999) (defining "action" as "a civil . . . proceeding."); *see also Hill v. U.S. Air Force,* 795 F.2d 1067, 1070–71 (D.C.Cir.1986) (construing "action" more expansively than "claim" under 28 U.S.C. § 1631). Thus, in order for MedAire to persuade the Court that venue is not proper under the fallback, it must show not just that it could have been sued in Arizona, but that the whole action, involving multiple properly joined parties and claims could have been brought in its entirety in another district court; MedAire suggests the District of Arizona.[14] *See FS Photo, Inc.,* 48 F.Supp.2d at 448 (interpreting, as a matter of first impression, the analogous section

(b)(3) to mean that another district must have both personal jurisdiction and venue over "all defendants"); *cf. also Liaw Su Teng,* 743 F.2d at 1148 ("Ordinarily transfer of a suit against multiple defendants is proper only if *all* of them would have been amenable to process in, and if venue as to all of them would be proper in, the transferee court." (emphasis added)). MedAire makes no such allegation.

As Plaintiff points out, problems with personal jurisdiction can be readily foreseen over Continental in Arizona. These potential jurisdiction problems become even more obvious when one considers the individual Continental employees who have also been sued. Establishing valid venue in Arizona is also problematic. For example, the Continental employees, who have been sued, do not reside in Arizona, thus stymieing residential venue under (a)(1) for all defendants. *See* 28 U.S.C. § 1391(a)(1). These employees have also committed no act in Arizona that might create transactional venue under section (a)(2). *See id.* at § 1391(a)(2).

 And while the burden rests on the plaintiff to establish a prima facie case of venue, the Court declines to require a plaintiff who seeks to utilize section (a)(3) to negate *every single one of the hundreds* of judicial districts as plausible venues. A defendant, such as MedAire, must posit a forum and articulate reasons why such is available, in terms of both venue and jurisdiction, in order to necessitate any response from a plaintiff in this regard. MedAire has failed to carry its initial burden, and Plaintiff has established a prima facie case of venue in this District under section (a)(3).

Thus, although the Court appreciates MedAire's efforts to deal with these rela-

---

**14.** The *Liaw Su Teng* opinion recognizes that in some instances it may be proper to sever and transfer a portion of a lawsuit when personal jurisdiction and venue cannot be established over all defendants in the transferee court. *See* 743 F.2d at 1148. This exception only applies, however, when a severance should be properly granted. *See id.* If that is what MedAire is seeking here, such would be denied. MedAire's and Continental's potential liability appear so tightly intertwined that a severance would not be proper. Therefore, MedAire must propose a forum in which this whole case can be adjudicated.

tively novel venue questions, MedAire's attempts to obtain dismissal or transfer ultimately fail. Venue is proper over the present parties and claims in the Southern District of Texas. MedAire's Motion to Dismiss or Transfer for Improper Venue is **DENIED.**

### C. *Motion for Discretionary Venue Transfer*

■ MedAire also seeks to have the Court transfer this action to Arizona based on 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this statute, the party seeking the transfer of venue bears the burden of demonstrating that the Court should, in its sound discretion, transfer the action. *See Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989) (noting that the decision to transfer a case rests exclusively within the sound discretion of the district court); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966) (highlighting that the movant bears the burden of demonstrating that the action should be transferred).

■ When considering whether a transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum. *See, e.g., Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1065 (S.D.Tex.1996); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993); *Hogan v. Malone Lumber, Inc.,* 800 F.Supp. 1441, 1443 (E.D.Tex.1992); *United Sonics, Inc. v. Shock,* 661 F.Supp. 681, 682–83 (W.D.Tex.1986). Generally, a plaintiff's choice of forum is entitled to great deference. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)); *United Sonics,* 661 F.Supp. at 683 (stating that the plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor").

MedAire maintains that this case should be transferred to Arizona principally because: (1) witnesses reside in Arizona; (2) its counsel has its office in Arizona; (3) documents relevant to the dispute are located in Arizona; and (4) the events giving rise to this lawsuit allegedly did not occur in Texas. Plaintiff argues in response that: (1) MedAire has not established that the action might have been brought in Arizona; (2) MedAire has not carried its burden of overcoming the traditional deference accorded a plaintiff's choice of forum; and (3) a preponderance of witnesses are located within this Court's judicial cognizance.

### 1. *Availability and Convenience of Witnesses*

■ The Court has previously stated that the convenience of key witnesses is the most important factor in a motion to transfer venue. *See Continental Airlines,* 805 F.Supp. at 1396. MedAire thus stresses that key witnesses are located in the District of Arizona. Each witness identified by MedAire, however, is one of its employees. This Court has often opined that the convenience of key witnesses who are employees of a defendant is "entitled to less weight because that party will be able to compel their testimony at trial." *Id.* at 1397; *see also Dupre,* 810 F.Supp. at 825. The Court also reminds both parties that it "vigorously exercises its authority" under Fed.R.Evid. 403 and 611(a) "to ensure that each witness' testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum," thereby limiting the time that wit-

nesses are absent from their jobs to an "absolute minimum." *Continental Airlines*, 805 F.Supp. at 1397; *Dupre*, 810 F.Supp. at 827. Moreover, the Court liberally construes Fed.R.Civ.P. 32 to allow depositions wherever convenient. Accordingly, while relevant, the location of the various employee witnesses indicated by MedAire is not a factor significantly favoring transfer.

### 2. *Location of Parties*

When determining the relative conveniences of transfer, the Court also considers the residences of the parties in the action. While Plaintiff apparently does not live in this District, at least one Defendant does reside here. Specifically, Continental, which has not joined in this Motion to Transfer Venue, is a colossus in the economy of this District and will certainly not be heard to complain about venue in this Court. *See Carlile v. Continental Airlines, Inc.*, 953 F.Supp. 169, 171 (S.D.Tex.1997). The parties to this lawsuit are citizens of at least three different states: Arizona, Oklahoma and Texas. Plaintiff filed this lawsuit in one of these jurisdictions. Therefore, the Court cannot say that this factor significantly favors transfer. Further, it is clear that the citizens of this District and Division have an interest in ensuring safety aboard aircraft outbound from any of this region's three commercial airports. This factor does not favor transfer.

### 3. *Location of Counsel*

Plaintiff and several Defendants have retained counsel located in the Southern District of Texas. MedAire's counsel, however, has its office in Phoenix, Arizona. Although this factor is not of primary importance, the Court does "give some weight to location of counsel if the plaintiff chooses local counsel to bring the suit." *Dupre*, 810 F.Supp. at 826. Therefore, although the Court places little emphasis on this factor, it does favor retention here, if only slightly.

### 4. *Location of Books and Records*

MedAire does not contend that the location of books and records is of paramount importance in this case. The Court agrees. *See Dupre*, 810 F.Supp. at 826–27. (noting that a personal injury action is typically not the type of action in which books and records are extremely necessary); *Continental Airlines*, 805 F.Supp. at 1397 (observing that in a personal injury case "it is unlikely that all ... relevant documents will be needed for trial, and ... documents can be produced and examined anywhere for discovery purposes."). It seems unlikely that many documents will be needed from MedAire to address whether its medical advice was negligent. If any records do become relevant, the Court finds absolutely no inconvenience inherent in bringing, if necessary, those records to Galveston. Moreover, to the extent relevant records are needed, many are likely to be located in this District, where Defendant Continental has its place of business. Thus, although the Court places little weight on the location of books and records in the present dispute, it nonetheless seems that transferring the case would not alleviate, but only shift, any record access problems. Thus, this factor does not favor transfer.

### 5. *Cost of Trial*

Trial of a lawsuit is an expensive exercise. It is rare that the forum in which a case is litigated is the most convenient or the least costly for all parties involved. Although the burden rests with MedAire, it proffers no specific information regarding the relative expenses and costs associated with the trial of this case in Galveston *vis-a-vis* Arizona. And again, as noted in the discussion of other factors, common sense makes it clear that transferring this lawsuit would only shift costs between Defendants as opposed to ameliorating total expenses. The Court, therefore, concludes that this factor does not support transfer.

### 6. *Location of the Alleged Wrong*

MedAire presses that its negligence, if any, began in Arizona and had its effect on Mr. McCaskey while the aircraft was over Mississippi, not over Texas as urged by Plaintiff. The Court notes that although the place of the alleged wrong is an important factor to consider when deciding whether to transfer venue, it is not the sole factor. *See Dupre,* 810 F.Supp. at 824. In this action, Plaintiff alleges that a substantial portion of the alleged wrong, or at least that which flowed from Continental, occurred in Texas. Thus, the Court finds that the residents of the Southern District of Texas have more than a passing interest in the outcome of this litigation and in the safety of passengers struck ill while aboard commercial airliners. *Cf. Continental Airlines,* 805 F.Supp. at 1399 ("Plaintiffs have alleged that Defendants engaged in . . . violation of the . . . law: to the extent that residents of the Galveston Division suffered from these actions . . . it cannot be said that they have no interest in the outcome of this litigation."). This factor favors retention.

### 7. *Possibility of Delay and Plaintiff's Choice of Forum*

■ Plaintiff's choice to litigate this case in the Galveston Division of the Southern District of Texas is entitled to great deference. *See United Sonics,* 661 F.Supp. at 683. Furthermore, "the possibility of delay or prejudice if the case is transferred will always play a large role in this Court's analysis." *Dupre,* 810 F.Supp. at 828. Of course, close scrutiny is given to plaintiff's choice of forum when the plaintiff does not live in the judicial district in which plaintiff has filed suit. *See id.* (explaining that while the Court generally honors a plaintiff's choice of forum, the Court is also "loathe to respect . . . blatant attempts at forum shopping with little or no factual justification"). The Plaintiff here resides in Tulsa, Oklahoma. However, Plaintiff has chosen to file suit in the District in which one of the two corporate

Defendants, Continental, has its place of business. Moreover, the flight on which Mr. McCaskey allegedly was harmed originated in Houston, Texas, again part of this District. Consequently, the Court cannot conclude that Plaintiff engaged in undue forum shopping.

The Court, moreover, notes that a transfer out of this Division may well cause all parties to lose the benefit of this Court's short trial track. *See United Sonics,* 661 F.Supp. at 683: *Dupre,* 810 F.Supp. at 828 (espousing that a prompt trial "is not without relevance to the convenience of parties and witnesses and the interest of justice"). Delays are inherent in any transfer to any District, and MedAire has not carried its burden of persuading this Court that Plaintiff's choice of forum should be disturbed and subjected to these inevitable delays. *See Sanders v. State Street Bank & Trust Co.,* 813 F.Supp. 529, 536 (S.D.Tex.1993).

■ After careful consideration of all the specific facts and relevant factors in this case, the Court concludes that MedAire, despite advancing several cogent arguments, has offered no compelling reasons for transfer to the United States District Court for the District of Arizona. Moreover, for much the same reasons seen in the Court's above discussion of proper venue, Arizona is not a place where this action "might have been brought." *See* Discussion Section II.B.3, *supra; Liaw Su Teng,* 743 F.2d at 1148 ("Ordinarily transfer of a suit against multiple defendants is proper only if *all* of them would have been amenable to process in, and if venue as to all of them would be proper in, the transferee court." (emphasis added)). An Arizona court could not have obtained jurisdiction and venue over all the parties and claims now before the Court. And, as also discussed above, if MedAire were actually seeking a severance and transfer, which it has not requested, such would also be denied. *See* Discussion Note 14, *supra.*

Thus, the Court declines to disturb the forum chosen by Plaintiff and to introduce the likelihood of delay inherent in any

transfer simply to avoid the insignificant inconvenience that MedAire may suffer by litigating this matter in Galveston rather than in Arizona. MedAire's Motion for Discretionary Transfer of Venue is **DENIED.**

### III. CONCLUSION

As set forth in detail above, the Court **ORDERS** that: MedAire's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED;** MedAire's Motion to Dismiss or Transfer for Improper Venue is **DENIED;** and MedAire's Discretionary Motion to Transfer Venue is **DENIED.**

Having **DENIED** MedAire's various motions, the Court briefly notes that in no way is it making a determination about the merits of this action. The nature of MedAire's business presents a somewhat novel question, especially with regard to personal jurisdiction, and MedAire's efforts to obtain a dismissal or transfer are well taken. At this stage, the Court simply urges MedAire, as it does all the litigants in this action, to strongly consider a fair, amicable resolution of this matter. And of course, if the evidence ultimately indicates that MedAire has done nothing wrong, the Court will be pleased to entertain any motion for dispositive relief MedAire might deem appropriate.

**IT IS SO ORDERED.**